UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DAVID MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-105-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| METROPOLITAN LIFE | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action arises out of Plaintiff David Moore's claim for disability benefits under a group insurance policy purchased by his former employer, Defendant American Water Works Company, Inc. ("American Water"), and insured by Defendant Metropolitan Life Insurance Company ("MetLife"). [Record No. 18 ¶¶ 4-10] Moore claims that MetLife improperly omitted certain benefits when it approved his claim for total disability benefits. [*Id.* ¶¶ 11-23] MetLife contends that Moore's assertion is based on an old version of his policy, and that the applicable version does not provide for the benefits he seeks. [Record No. 39] Moore continues to believe that he is entitled to the omitted benefits, and moves for judgment under 29 U.S.C. § 1132(a)(1)(B). [Record No. 40] He also contends that MetLife failed to conduct a full and fair review of his claim under 29 U.S.C. § 1133. [*Id.*] Conversely, MetLife argues that its benefits determination was correct, and moves for a judgment dismissing Moore's claims. [Record No. 39]

Moore also asserts that American Water breached its fiduciary duty by failing to sufficiently advise him of any change to his benefits and by providing him with incorrect policy

-1-

documents. [Record No. 40] He seeks equitable relief and the imposition of statutory penalties under 29 U.S.C. §§ 1132(a)(3) and (c), and moves for summary judgment against American Water. [Record No. 40] American Water asserts that there is no evidence to support Moore's claims, and moves for summary judgment in its favor. [Record No. 41]

For the reasons that follow, MetLife's motion for judgment will be granted, and Moore's motion for judgment against MetLife will be denied. Moore's motion for summary judgment against American Water will be granted, in part, and denied, in part. Finally, American Water's motion for summary judgment will be granted, in part, and denied, in part.

## I.

David Moore was working for American Water and was enrolled in a group insurance policy purchased by American Water and insured by MetLife when he suffered a heart attack and stroke in January and February of 2015. [Administrative Record ("AR") 521, 523-24, 526] He initially received short-term disability benefits for 26 weeks, after which MetLife automatically opened a claim under the life insurance component of the plan. [AR 71, 180] MetLife informed Moore by letter dated December 7, 2015, that he satisfied the requirements for Total Disability, and that effective July 14, 2015, his life insurance premiums would be waived while he remained "Totally Disabled" under the plan. [AR 61] The approval letter further stated that Moore's coverage for Basic Continued Life Protection was $69,000, and his coverage for Optional Employee Continued Protection was $169,000, for a combined total of $235,000.00, which would reduce to a combined total of $10,000.00, when Moore turned 70 years old on March 2, 2033. [*Id.*]

Moore was at that point in possession of a 2002 Summary Plan Description ("SPD") provided by American Water. [Record No. 40-2, pp. 2-3] The 2002 SPD provided that:

> [i]f you become eligible for a Permanent and Total Disability benefit and the disability lasts for six months or more, a monthly income of $18 for each $1,000 of the amount of your basic and optional insurance is payable. The monthly income will continue until the amount of your insurance, plus interest as may be declared by Aetna on the unpaid balance, is exhausted.[1]

[*Id.* at 33] Additionally, the 2002 SPD did not provide for a reduction in benefits when Moore turned 70 years old. [*Id.*]

Moore's wife called MetLife on December 23, 2015, for an explanation of the approval letter. [AR 66] She called again five days later to inquire about the payment of a monthly income of $18 for each $1,000 of life insurance coverage. [AR 66] She was advised that MetLife did not offer any coverages that paid benefits to employees. [*Id.*]

Moore's attorney then sent letters to MetLife and American Water on June 13, 2016, requesting "a complete copy of the life insurance policy, insurance certificate, life insurance plan document(s), and summary plan description." [AR 78-83, 150-51] MetLife called Moore's attorney the following day and advised him that he would need to contact American Water to obtain the documents.[2] [AR 65] American Water responded by e-mail on July 15, 2016, and attached two documents. [AR 152] The first was a copy of a 2011 SPD which did not provide for the payment of Disability Life Installment Benefits and stated that total disability benefits "reduce[] to $10,000 when you reach age 70." [Record No. 41-8, p. 13] The second was a life insurance certificate which provided for Disability Life Installment Benefits of $18.00 a month for each $1,000 of life insurance coverage and did not contain a

---

[1] Aetna was the plan's insurer in 2002. [*See* Record No. 39-1, pp. 2-3.] MetLife did not begin insuring the plan's benefits until January 1, 2003. [*See* Record Nos. 39-3, p. 527; 39-5, p. 6.]

[2] American Water was the plan administrator. As a result, it had the responsibility to provide participants with applicable plan documents. *See* 29 U.S.C. §§ 1024(b)(4), 1132(c); *Butler v. United Healthcare of Tennessee, Inc.*, 764 F.3d 563, 570 (6th Cir. 2014)

reduction at age 70. [AR 103, 117] The 2011 SPD also stated that, "[i]f a conflict arises between this summary and any official plan documents, the official plan documents will govern." [Record No. 41-8, p. 3]

Moore's attorney sent MetLife a letter on July 25, 2016, requesting the payment of Disability Life Installment Benefits and clarification of MetLife's statement that the benefits payable upon Moore's death would reduce when Moore turned 70 years old to a combined total of $10,000. [AR 85-87] In support, he attached the certificate he had received from American Water. [*Id.* at 85-138] MetLife responded by letter dated August 18, 2016, that "[t]he customer's certificate you submitted to our office for review is not the applicable customer's certificate that was used for Mr. Moore's claim review." [AR 140] Moore's attorney responded in a letter dated August 29, 2016, with the following questions:

> Are you saying that the Plan sent with my July 25 letter is not the correct plan? Or are you saying that you simply used a different certificate in conducting your review? Are you saying that the certificate you used is the correct one? Could you please send me a copy of the certificate you believe is the correct one and whatever certificate you used for your review, if it is different?

[AR 148]

MetLife investigated the matter to confirm that it had used the correct certificate in reviewing Moore's claim, and that the certificate Moore's attorney provided was incorrect. [AR 157-179] MetLife's review revealed that American Water had a version of its benefits plan in effect in 1996, which was insured by Aetna and included Disability Installment Life Benefits in the amount of $18 per $1,000 of life insurance coverage with no later reduction in the benefit amount. [Record No. 39-1, pp. 2-3 (citing Record No. 35-3, pp. 11-13)] The 2002 SPD that Moore possessed appears to correspond to this policy. [*See* Record No. 40-2.] MetLife began insuring the plan on January 1, 2003, and issued a policy to American Water

including these same benefits. [Record No. 39-3, p. 527] This is the policy that American Water provided in response to the request from Moore's attorney. [*See* Record No. 18-1.]

However, the policy was amended on April 1, 2006, and retroactively effective to January 1, 2006, and replaced by a new certificate of insurance designated as Certificate 11. [Record No. 39-3, p. 567] Certificate 11 continued to have Disability Installment Life Benefits in the amount of $18 per $1,000 of life insurance coverage, but reduced the amount of Death Benefits During Total Disability to $10,000 at age 70. [*Id.* at 583, 597-98] Additionally, it stated that, "[i]f any prior certificate relating to the coverage set forth herein has been given to the Employee, such certificate is void." [*Id.* at 570]

Certificate 15 replaced Certificate 11 on January 1, 2011, and was retroactively effective to January 1, 2006. [*Id.* at 566, 620, 622] Certificate 15 retained the reduction in benefits at age 70, and also did not provide for Disability Installment Life Benefits. [*Id.* at 620-73] Certificate 20 replaced Certificate 15 on March 28, 2011, and retroactively to November 17, 2010. [*Id.* at 537-38, 674, 676] As with Certificate 15, Certificate 20 included the reduction of Continued Death Benefits During Total Disability at age 70 to $10,000, and did not include any provision providing Disability Installment Life Benefits. [*Id.* at 674-773] According to MetLife and American Water, Certificate 20 is the governing document for Moore's benefits claim. [*See* Record Nos. 35, 36, 39, 41, 44, 45, 48, 49.]

The 2011 SPD that American Water sent to Moore's attorney on July 15, 2016, is consistent with Certificate 20. [Record No. 41-8] Moore does not recall having received the 2011 SPD until that time. [Record No. 40-2] However, in July of 2012, American Water retained A+ Letter Services, Inc., to distribute the SPDs to American Water employees along with a cover letter explaining the document and its importance. [Record Nos. 44-6; 44-7]

Moore's name and address was included in a list of union employees identified as Lot #4 Pension Eligible. [Record Nos. 44-8; 44-9, p. 23] A+ Letter Services, Inc., billed American Water for mailing the SPDs to the Lot #4 members on July 31, 2012. [Record No. 44-6]

Having determined that the certificate used for its review was correct, and that the certificate Moore obtained from American Water was incorrect, MetLife sent the following e-mail to American Water on December 22, 2016:

> We received an inquiry regarding a Life Waiver of Premium claim (David M. Moore). Specifically, Mr. Moore and his attorney forwarded MetLife the attached certificate they received from American Water regarding his WOP Claim. It appears Mr. Moore should have received Certificate 20 (attached) which is applicable for All American Water Union Employees.
>
> Can you confirm if this is correct, and if so, would you be able to provide Mr. Moore and his attorney with Certificate 20. Provided below is the contact information to Mr. Moore's attorney.

[AR 391] However, Moore never received a response from MetLife or American Water. [Record No. 40, p. 10] Moore filed this action in the Clark Circuit Court on January 30, 2017. [Record No. 1-1, pp. 5-11] MetLife removed the matter to this Court on March 1, 2017, and attached a copy of Certificate 20 to its notice of removal. [Record No. 1-2] This was the first time that Moore obtained a copy of Certificate 20. [*See* Record No. 40, pp. 10-11.]

Moore's attorney wrote to American Water on March 23, 2017, to advise that MetLife had produced a different insurance certificate than the one American Water provided on July 15, 2016, and to inquire regarding which certificate applied to Moore's claim. [Record No. 40-4] American Water sent the following response a week later: "Our Benefits Team has confirmed that the Exhibit B Certificate you received from MetLife is the correct Certificate applicable to Mr. Moore. I apologize for the confusion." [*Id.*] However, Moore nonetheless issued a subpoena duces tecum to American Water on July 14, 2017, requesting copies of

insurance policies or certificates applicable to Moore from 2005 to the present. [Record No. 14-1] American Water responded by providing a copy of the same certificate it had sent Moore on July 15, 2016, rather than Certificate 20. [*See* Record No. 40, p. 11.]

Moore filed a Second Amended Complaint on July 5, 2017, adding American Water as a defendant. [Record No. 18] On September 7, 2017, Moore filed a motion to compel MetLife to respond to discovery requests aimed at determining which certificate applied to Moore's claim. [Record No. 33] American Water filed a response to the motion, attaching a copy of Certificate 20, and a declaration from its benefits manager, Sean King, stating that Certificate 20 was indeed the applicable policy, and not the certificate initially provided to Moore. [Record Nos. 35-1, 35-5] This was the first time that Moore received a copy of Certificate 20 directly from American Water. [*See* Record No. 40, p. 12.]

Moore's claims against MetLife arise under 29 U.S.C. §§ 1132(a)(1)(B) and 1133. He argues that he is entitled to Disability Life Installment Benefits in the amount of $18.00 per month for each $1,000 of life insurance coverage, and that his benefits should not reduce at age 70. He also contends that MetLife failed to conduct a full and fair review of his benefits claims. Moore's claims against American Water arise under 29 U.S.C. §§ 1132(a)(3) and (c). He seeks equitable relief and statutory penalties for American Water's failure to timely provide him with accurate plan documents.

## II.

The review of Moore's claim for benefits under 29 U.S.C. § 1132(a)(1)(B), is confined to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Generally, a challenge under 29 U.S.C. § 1132(a)(1)(B), is reviewed *de novo*. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). But if the plan at issue grants the administrator the discretion to determine benefit eligibility, the Court will uphold the administrator's determination unless it is arbitrary or capricious. *Id.* Here, the plan provides MetLife with discretion to "interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." [Record No. 39-3, pp. 618, 669] Accordingly, the arbitrary and capricious standard applies to the review of MetLife's benefits determination.

Moore's claim that MetLife failed to conduct a full and fair review under 29 U.S.C. § 1133, raises a procedural challenge to MetLife's decision, and the Court may consider evidence outside of the administrative record. *Id.* at 618 (Gilman, J. concurring) (citing *VanderKlok v. Provident Life and Accident Ins. Co., Inc.*, 956 F.2d 610, 617 (6th Cir. 1992)). Additionally, this procedural challenge presents a legal question which is reviewed *de novo*. *See Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 299 (6th Cir. 2007). The plaintiff bears the burden of proof of establishing by a preponderance of the evidence that he is entitled to benefits under the plan. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 701 (6th Cir. 2014).

Moore's claims against American Water for breach of fiduciary duty and failure to supply information under §§ 1132(a)(3) and (c), are reviewed on a summary judgment standard. *See Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 798-99 (6th Cir. 2012); *Van Loo v. Cajun Operating Co.*, 703 F. App'x 388, 393-94 (6th Cir. 2017). Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th

Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In Counts One and Two of his Second Amended Complaint, Moore seeks to recover payment of Disability Installment Life Benefits and to enforce and/or clarify his "that his Death Benefits are not subject to reduction to $10,000 on March 2, 2033." [Record No. 18, ¶¶ 36-44] Moore's claim for these benefits is based on the 2002 SPD he received from American Water and the certificate American Water sent to his attorney on July 15, 2016, and produced in response to the subpoena duces tecum issued on July 14, 2017. [*See* AR 103, 117]

MetLife and American Water contend that the 2002 SPD pertains to an outdated version of Moore's policy, and that the certificate produced by American Water is an old certificate. [*See* Record Nos. 35, 36, 39, 41, 44, 45, 48, 49.] Instead, they assert that Certificate

20 governs Moore's claim, and that the benefits Moore seeks have not been available since the policy was amended on January 1, 2006. [*Id.*; *see also* Record No. 39-3, pp. at 566, 620-73.] Moore does not argue that the benefits he seeks are available under Certificate 20, but instead contends that MetLife should not have applied Certificate 20 to his claim and that this matter should be remanded for further review. [*See* Record Nos. 40, 42, 46.]

Moore may not obtain benefits based on an obsolete version of his plan. *See* 29 U.S.C. § 1132(a)(1)(B) (allowing a plan participant "to recover benefits due to him *under the terms of his plan*, to enforce his rights under *the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*") (emphasis added). The evidence before the Court demonstrates that Certificate 20 was the governing certificate in June of 2015, when MetLife applied it to Moore's benefits claim, and that Certificate 20 voided any prior certificate. [*See* Record No. 39-3 at 537-38, 674, 676.] The fact that American Water provided a different certificate to Moore's attorney does not change this fact, especially given that American Water now agrees that Certificate 20 governs Moore's claim and that the certificate it previously provided was incorrect. *See LaCosse v. Sun Life Fin. Servs. Co.*, 2:10-cv-56, 2011 WL 4036673, at *1 (W.D. Mich. Sept. 12, 2011) (considering the "new policy" provided by the claims administrator rather than the "old policy" provided by the employer); [Record No. 35.] Certificate 20 provides that Continued Death Benefits During Total Disability reduce to $10,000 at age 70, and it does not include any provision providing Disability Installment Life Benefits. [*See id.* at 696.] Accordingly, Moore is not entitled to the benefits he now seeks.

Moore raises two new arguments in his briefs in an effort to avoid this conclusion. First, he asserts that the defendants failed to produce evidence that the policy amendments were properly effectuated and, therefore, this case should be remanded to MetLife to conduct

a full and fair review. [Record No. 42, pp. 6-9] Although a plan participant may bring a claim against the plan or plan administrator attacking the validity of a change to the plan's terms, *see Custiss-Wright Corp.*, 514 U.S. 73, 84 (1995), Moore's Second Amended Complaint does not allege such a claim. It merely seeks benefits under the earlier version of Moore's policy by alleging that it was the correct version. [Record No. 18] As a result, Moore's invalid amendment claim is not properly before the Court. *See Corley v. Commonwealth Indus., Inc. Cash Balance Pension Plan*, 3:07-cv-196, 2008 WL 5110963, at *3 n.5 (W.D. Ky. Dec. 3, 2008) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005)). Additionally, the proper vehicle to bring an invalid amendment claim is under 29 U.S.C. § 1132(a)(3), not 29 U.S.C. § 1132(a)(1)(B). *See Schleben v. Carpenters Pension Trust Fund—Detroit &* Vicinity, 14-cv-11564 (E.D. Mich. 2014) (citing *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 741 (8th Cir. 2002)). Moore's Second Amended Complaint seeks benefits under 29 U.S.C. § 1132(a)(1)(B), and does not challenge the amendments to his policy under 29 U.S.C. § 1132(a)(3). [Record No. 18] Accordingly, Moore's improper amendment claim fails to provide a basis to avoid the application of Certificate 20 to his benefits claim.

Moore next alleges that MetLife failed to conduct a full and fair review of his claim under 29 U.S.C. § 1133. Under that provision, MetLife was required to provide Moore with adequate notice of the reasons his claim was denied, and to afford him a reasonable opportunity for a full and fair review. 29 U.S.C. § 1133. MetLife initially approved Moore's claim for benefits, and so this provision did not apply. But Moore contends that he effectively submitted a new claim for benefits when his wife called to inquire about the payment of Disability Life Installment Benefits and his attorney sent MetLife a letter requesting the payment of Disability Life Installment Benefits and clarification of MetLife's statement that the benefits payable

upon Moore's death would reduce when Moore turned 70 years old to a combined total of $10,000. [*See* AR 66, 85-87.] MetLife's only response to those inquiries was its letter dated August 18, 2016, which stated that "[t]he customer's certificate you submitted to our office for review is not the applicable customer's certificate that was used for Mr. Moore's claim review." [AR 140] Moore argues that this response did not sufficiently state the reasons his claim was denied or afford him an opportunity for a full and fair review.

The Sixth Circuit has adopted a "substantial compliance" test in deciding whether denial notices meet the requirements of § 1133. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). In making that assessment, the Court considers all the communications between the claims administrator and plan participant, and determines whether the notice provided fulfills the purpose of § 1133. *Id.* "If the denial notice is not in substantial compliance with § 1133, reversal and remand to the district court or to the plan administrator is ordinarily appropriate. A remand, however, is not required if it would 'represent a useless formality.'" *Id.* (citations omitted). Remand is a "useless formality" when it would not serve a useless purpose. *See Kent v. United Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996); *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 660 (6th Cir. 2013).

Assuming *arguendo* that Moore presented a new claim for benefits by requesting additional benefits after receiving MetLife's approval letter, and that MetLife's response on August 18, 2016, was not in substantial compliance with § 1133, the Court finds that MetLife's violation has been cured and that remanding this case would represent a useless formality. "When an ERISA administrator denies a claim without identifying its reasons for doing so, the solution is to allow the claimant to present additional evidence to the district court (or to the administrator) to rebut the administrator's later-revealed rationales for denying the claim."

*Pankiw v. Fed. Ins. Co.*, 316 F. App'x 458, 460 (6th Cir. 2009). Here, it has become abundantly clear that MetLife denied Moore's claim for additional benefits because Moore was not entitled to those benefits under Certificate 20. The parties were permitted to conduct discovery regarding which version of the certificate applied, and Moore has been unable to establish that MetLife's application of Certificate 20 was erroneous. [*See* Record No. 38.] Further, Moore has not alleged that there is additional evidence to present to MetLife on remand. Under these circumstances, remanding this case for further review would only delay the outcome, and would not serve a useful purpose. *Pankiw*, 316 F. App'x at 461; *see also Kent*, 96 F.3d at 807; *Dutton v. Unum Provident Corp.*, 170 F. Supp. 2d 754, 761 (W.D. Mich. 2001).

In conclusion, MetLife's determination of Moore's claim for benefits was not arbitrary and capricious, and Moore's claim under 29 U.S.C. § 1132(a)(1)(B), will be denied. Moore has not established that MetLife failed to conduct a fair and full review of his benefits claim, and applying a *de novo* standard, his claim under 29 U.S.C. § 1133, will be denied.

**IV.**

Counts Three and Four of Moore's Second Amended Complaint assert that American Water failed to provide applicable plan documents and breached its fiduciary duty under 29 U.S.C. §§ 1132(a)(3) and (c). [Record No. 18, ¶¶ 45-63] To establish a claim for breach of fiduciary duty under the ERISA, "a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

Whether an affirmative misrepresentation was "material" is a mixed question of law and fact that is appropriate for summary judgment. *Id.* "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which [he] may be entitled." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999); *see also Van Loo*, 703 F. App'x at 394 ("Fiduciaries are liable when their misrepresentations cause an employee to be inadequately informed in her decision whether to pursue benefits."). To show detrimental reliance, a plaintiff must establish that the misrepresentation influenced his conduct, causing prejudice. *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 276 (6th Cir. 2016). "The prejudice, or detriment, suffered must be actual and substantial, but may be proved by loss of opportunity to improve one's position.'" *Id.*

Moore alleges that American Water breached its fiduciary duty by failing to provide him with a SPD informing him that Disability Life Installment Benefits were no longer available and that Continued Death Benefits During Total Disability were to reduce to $10,000 at age 70. [Record No. 40, pp. 18-23] As plan administrator, American Water was required to provide Moore with an SPD that was written in a manner calculated to be understood by the average plan participant, and was sufficiently accurate and comprehensive to reasonably apprise such participants of their rights and obligations under the plan. 29 U.S.C. §§ 1022 and 1024. The ERISA regulations provide that the SPD must be furnished by a method of delivery likely to result in full distribution, and reasonably calculated to ensure actual receipt of the material by plan participants. 29 C.F.R. § 2520.104b–1(b)(1).

Moore's affidavit states that he remembers receiving an SPD when he first became employed in 2000, and then receiving another SPD sometime in 2001 or 2002. [Record No.

40-2] He does not recall receiving any additional SPDs, and does not have any SPD dated later than 2002, although it would have been his normal practice to keep such documents. [*Id.*] American Water, by contrast, has submitted documents indicating that it retained A+ Letter Services, Inc., to distribute the SPDs to American Water employees in July of 2012. [Record Nos. 44-6; 44-7] Moore's name and address was included in a list of union employees identified as Lot #4 Pension Eligible. [Record Nos. 44-8; 44-9, p. 23] A+ Letter Services, Inc., billed American Water for mailing the SPDs to the Lot #4 members on July 31, 2012. [Record No. 44-6]

The evidence submitted by American Water is sufficient to establish that it satisfied its obligation to furnish the 2011 SPD by means "reasonably calculated to ensure actual receipt of the material." 29 C.F.R. § 2520.104b–1(b)(1); *see also DeBene v. BayCare Health Sys., Inc.*, 668 F. App'x 831, 839-40 (11th Cir. 2017). And Moore's statement that he does not recall receiving any SPDs after 2002 fails to provide "specific facts" showing that there is a genuine dispute regarding this issue. *See Matsushita*, 475 U.S. at 587.

Moore also contends that, assuming that he was sent the 2011 SPD, that SPD did not provide sufficiently accurate and comprehensive to reasonably apprise participants of their rights and obligations under the plan. 29 U.S.C. §§ 1022 and 1024. He argues that the 2011 SPD was insufficient because it misleadingly retained a section titled "Total Disability Benefits" and did not specifically advise participants of the changes to their policy removing Disability Life Installment Benefits and reducing total disability benefits at age 70. [*See* Record Nos. 41-8, p. 13; 43, pp. 4-7.]

Both of these arguments are unavailing. "ERISA does not require plan administrators to republish the summary plan description every time an amendment is made to the plan."

*Crosby v. Rohm & Haas Co.*, 480 F.3d 420, 430 (6th Cir. 2007). Instead, plan administrators may simply furnish participants with a summary of material modifications to the plan. *See* 29 U.S.C. §§ 1022(a), 1024(b)(1). However, when the plan administrator does provide a new SPD when changes or modifies a plan, it is not also required to provide participants with a description of the modifications. *See* 29 C.F.R. § 2520.104b-3; *Butler v. FCA US, LLC*, Case No. 14-14752, 2016 WL 6679828 (E.D. Mich. Nov. 14, 2016) ("No [statement of material modifications] was required to be issued because a new SPD was issued[.]").

Consistent with Certificate 20, the 2011 SPD does not provide for the payment of Disability Life Installment Benefits and states that total disability benefits "reduce[] to $10,000 when you reach age 70." [Record No. 41-8, p. 13] The heading "Total Disability Benefits" merely indicates that "Total Disability Benefits"—which Moore was approved to receive— are available under the plan. This heading does not misleadingly indicate that Disability Life Installment Benefits remain available or that there will be no reduction to a participant's total disability benefits. Contrary to Moore's contention, it is not "easy to understand" how Moore could have read the 2011 SPD and understood it to mean that he was entitled to these benefits. [*See* Record No. 40, p. 23 (quoting *Pearce v. Chrystler Grp., L.L.C. Pension Plan*, 615 F. App'x 342, 247 (6th Cir. 2015)).]

Finally, Moore argues that American Water breached its fiduciary duty by twice providing an inapplicable certificate in response to his attorney's requests for plan documents. [Record No. 39, pp. 21-23; 43, pp. 10-11] However, American Water provided these documents in 2016 and 2017, well after Moore's claim for total disability benefits had already been approved. [*See* AR 61, 103, 117; Record No. 40, p. 11.] Accordingly, Moore cannot demonstrate that this alleged misrepresentation would have mislead "a reasonable employee

in making an adequately informed decision in pursuing disability benefits to which [he] may be entitled," *Krohn*, 173 F.3d at 548, or that the misrepresentation influenced his conduct, causing prejudice. *Deschamps*, 840 F.3d at 276. Accordingly, Moore's claim for breach of fiduciary duty against American Water will be denied.

Moore also asserts that the Court should impose statutory penalties for American Water's failure to provide him with accurate plan documents within 30 days of his request. [Record No. 40, pp. 25-28] The ERISA provides that:

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).

"The purpose of the penalty is not to punish defendants' bad faith actions or for any resulting prejudice to plaintiffs, but rather 'to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so.'" *Harris-Frye v. United Omaha Life Ins. Co.*, 1:14-cv-72, 2015 WL 5562196, *3 (E.D. Tenn. Sept. 21, 2015) (quoting *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994); *see also Harris-Frye v. United Omaha Life Ins. Co.*, (E.D. Tenn. Sept. 21, 2015). As a result, a showing of bad faith or prejudice is not a prerequisite to imposing statutory penalties. *Id.* However, when the defendant's violation was not in bad faith and the plaintiff suffered little or no prejudice, courts

generally confine the award to a nominal amount. *See Jackson v. E.J. Branch Corp.*, 937 F. Supp. 735, 742 (N.D. Ill. 1996) (collecting cases).

Moore's attorney asked American Water to provide "a complete copy of the life insurance policy, insurance certificate, life insurance plan document(s), and summary plan description," on June 13, 2016. [AR 78-83, 150-51] American Water promptly responded, attaching an accurate 2011 SPD and *inaccurate* certificate to its response. [AR 103, 117, 152] It was reasonable for Moore to believe that he may have been entitled Disability Life Installment Benefits with no reduction based on these documents, given that the 2011 SPD stated that "[i]f a conflict arises between this summary and any official plan documents, the official plan documents will govern." [Record No. 41-8, p. 3] Accordingly, Moore's attorney sent MetLife a letter on July 25, 2016, requesting payment and clarification of these benefits. [AR 85-87] After receiving the letter from Moore's attorney, MetLife determined that American Water had sent an inapplicable certificate, and notified American Water of the error on December 22, 2016. [AR 391] But American Water did not contact Moore, and Moore filed this civil action without having been informed of which certificate applied to his claim. [Record No. 1-1]

Moore did not receive a copy of Certificate 20 until March 1, 2017, and he only received it then because MetLife attached a copy to its notice of removal. [Record No. 1-2] Moore's attorney notified American Water of the discrepancy between the certificates on March 23, 2017. [Record No. 40-4] American Water confirmed that Certificate 20 was the applicable policy for the first time on March 30, 2017. [*Id.*] However, American Water *again* sent a copy of the inapplicable policy in response to the subpoena duces tecum Moore issued on July 14, 2017. [Record No. 14-1] The matter was not fully resolved until American Water filed a

declaration from its benefits manager on September 28, 2017, clarifying that Certificate 20 was the applicable certificate. [Record No. 35-1]

American Water's failure to provide Moore with the applicable certificate governing his benefits claim within 30 days of his request constitutes a violation of 29 U.S.C. § 1024(b)(4), and the imposition of statutory penalties is appropriate under 29 U.S.C. § 1132(c)(1). The Court does not find that American Water's conduct was in bad faith, and Moore was not prevented from making a claim for benefits as a result of American Water's conduct. However, American Water's ERISA violation created confusion regarding Moore's benefits, leading to litigation. Despite being notified by MetLife of the error over a month before Moore filed this civil action, American Water did not timely cure its mistake.

Accordingly, the Court finds that statutory penalties in the amount of $15 per day is warranted to induce administrators to timely provide participants with requested plan documents, and to penalize American Water's failure to do so in this case. *Bartling*, 29 F.3d at 1068. "§ 1132(c)(1) penalty calculations begin only 31 days after the plaintiffs made their document requests." *Id.* at 1069. Moore made his first claim for plan documents on June 13, 2016, and the penalty begins to accrue on July 14, 2016. The applicable period for the penalty ends on September 28, 2017, when American Water submitted a declaration from its benefits manager and provided Moore with the applicable policy. Thus, a $15 penalty for 441 days results in a total penalty of $6,615.00.

V.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendant MetLife's motion for judgment is **GRANTED**.

2. The plaintiff's motion for judgment against Defendant MetLife is **DENIED**.

3. Defendant American Water's motion for summary judgment is **GRANTED** in part and **DENIED** in part, as outlined in Section IV of this Memorandum Opinion and Order. A penalty in the amount of $6,615.00, is assessed against Defendant American Water.

4. The plaintiff's motion for summary judgment against Defendant American Water is **GRANTED**, in part, and **DENIED**, in part, as outlined in Section IV of this Memorandum Opinion and Order.

5. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

6. A corresponding Judgment shall be entered this date.

This 7th day of March, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge